UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOSHOLU, INC, MICHAEL MARGOLES, and EDWARD AMARAL, as assignees of JOHN BECKSTEDT, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 18 C 2721 |
| v. | ) ) | Judge Thomas M. Durkin |
| SEAN GALVIN AND MALCOLM D. HERZOG, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Mosholu, Inc., Michael Margules and Edward Amaral ("Plaintiffs"), as assignees of John Beckstedt, sued Sean Gavin and Malcolm Herzog ("Defendants") for alleged breach of contract and unjust enrichment due to their failure to pay Beckstedt for the 25% ownership interest in When 2 Trade Group, LLC ("W2TG") Beckstedt allegedly transferred to each of them. Defendants moved for summary judgment. R. 46. For the following reasons, that motion is denied.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To

defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background[1]

Prior to the events giving rise to this lawsuit, Beckstedt was (with a few exceptions not relevant here) the sole owner and operator of W2TG. W2TG functioned initially as a purveyor of investment information. At some point, it expanded the scope of its business. Beckstedt continued his day-to-day involvement with the company, but transferred much of his ownership interest in it, including—Plaintiffs allege—25% to each Defendant for about $2.1 million in the aggregate.[2] But the circumstances of the transfer agreement are sketchy at best. While Defendants do not dispute that some agreement was reached, they vigorously dispute the parties to, and terms and timing of, that agreement.

---

[1] Additional background information can be found in the Court's July 19, 2018 Memorandum Opinion and Order denying Defendants' motion to dismiss. R. 20.

[2] Plaintiffs jointly obtained a California state court judgment against Beckstedt and W2TG (the "judgment debtors") before this lawsuit, which they then domesticated to the Circuit Court of Cook County. Plaintiffs thereafter commenced supplementary proceedings—including a citation to discover assets—directed to the judgment debtors, and in January 2018, Beckstedt (as judgment debtor) executed assignments to Plaintiffs (as judgment creditors) of his "right, title and interest in . . . all claims by Beckstedt against" Defendants "related to the transfer of membership interest in [W2TG]." R. 1, Exs. 1 and 2; R. 49 ¶ 8. This lawsuit followed.

First, the parties dispute whether Defendants are obligated to pay Beckstedt (and ultimately Plaintiffs as his assignees) at all. Defendants both attest that Beckstedt's transfer of W2TG ownership was not to them individually. Instead, they state that Beckstedt transferred 100% ownership in W2TG to Rocky Mountain Minerals and Mining, LLC ("Rocky Mountain"), an entity in which Defendants, Beckstedt and Luis Bandeira[3] were equal partners, but which dissolved in February 2014. *See* R. 46, Exs. 1 and 2; R. 54 ¶ 18. Defendants further attest that they never agreed to pay Beckstedt anything in exchange for ownership in W2TG—whether through their membership in Rocky Mountain or otherwise. *See* R. 46, Ex. 1 ¶¶ 2, 9; R. 46, Ex. 2 ¶¶ 2, 9. Indeed, both represent that they were required to make only non-monetary contributions in exchange for membership in Rocky Mountain, which in turn owned W2TG. R. 46, Ex. 1 ¶ 7; R. 46, Ex. 2 ¶ 7.

Beckstedt's affidavit does not mention Rocky Mountain. Instead, he attests that he transferred his interests in W2TG "in a manner which would result in" Defendants (and Bandeira) "each owning twenty-five percent of the entire membership interest," and reflecting the circumstances under which "he wished to get paid" $2.1 million by Defendants. R. 46, Ex. 3 ¶¶ 3, 5-6. Beckstedt's oral testimony is in accord. *See, e.g.*, R. 51, Ex. 1 at 47-48 (transcript of January 22, 2018 oral examination in state court proceeding to discover assets in which Beckstedt states that his transfer of interest in W2TG was to Defendants and that Defendants were

---

[3] Mr. Bandeira is not a party to this lawsuit, and neither any party to this lawsuit, nor Beckstedt argues that he owes any portion of the $2.1 million.

3

obligated to pay for it). A document that purports to represent the "current share registry of When 2 Trade Group" as of August 9, 2016 ("W2TG register") also reflects a transfer directly to Defendants.[4] *See* R. 51, Ex. 9; R. 54 ¶ 13.

The parties also dispute the timing of any agreement. During his oral examination in the proceeding to discover his assets, Beckstedt testified that Defendants (and Bandeira) had each agreed to purchase a 25% interest in W2TG in 2009. R. 49 ¶ 13. But in other testimony, Beckstedt stated that the agreement occurred between September 2011 and April 2013. *See* R. 54 ¶ 1; R. 51, Ex. 1 (transcript of Beckstedt's January 22, 2018 oral examination in state court proceeding to discover his assets); R. 51, Ex. 2 at 17-18 (transcript of Beckstedt's February 7, 2019 deposition in which he states "I believe [the agreement] happened in early 2012 or late 2011"). And his affidavit offers a three-year timeframe. R. 46, Ex. 3 ¶ 3 (Beckstedt's May 6, 2019 affidavit in which he attests that the agreement occurred "[i]n early 2012, or before then, possibly as long ago as 2009"). Further, W2TG's register—signed by Gavin—reflects the transfer of shares to Defendants in March 2016. *See* R. 51, Ex. 9; R. 54 ¶ 13.

The parties next dispute whether any payment has yet become due, assuming it was owed to begin with. Defendants point to Beckstedt's testimony indicating that he expected to be paid the amounts due him from Gavin and Herzog from the

---

[4] Gavin also testified in January 2018 that he owned a 25% ownership interest in W2TG. R. 51, Ex. 8 at 4-5. He stated that the transfer occurred through "discussions" "of forming a partnership" between himself, Herzog, Beckstedt and Bandeira, likely between 5 and 10 years prior. *Id.* at 5; R. 54 ¶ 12.

4

distribution of W2TG profits, and that because W2TG was not yet in a position to distribute profits, no payment was yet due. R. 49 ¶¶ 15, 18; R. 46, Ex. 3 ¶ 10. Plaintiffs deny that these statements are sufficient as a matter of law to establish that payment was conditioned on profit, and dispute any suggestion that W2TG never had funds to disburse, pointing to bank records reflecting over $2 million in W2TG account withdrawals between 2013 and 2017, and many transfers to Gavin. R. 49 ¶ 18; R. 51, Exs. 11 and 13.

Finally, although no written agreement has surfaced, the parties dispute the fundamental question of whether any document memorializes the terms of any agreement between them regarding the $2.1 million Plaintiffs claim (and Beckstedt acknowledges) is still owed. Both sides point to Beckstedt's inconsistent statements on the matter; Defendants offer Beckstedt's affidavit, in which he attests that the arrangement was never reduced to writing, R. 46, Ex. 3 ¶ 7, whereas Plaintiffs offer his December 14, 2017 oral examination in the proceeding to discover his assets, in which he testified both that he was "sure" and that he "believe[d]" that a document had been made to effectuate the transaction, R. 51, Ex. 4 at 133.

Plaintiffs' complaint alleges: 1) breach of contract by Gavin (Count I); 2) breach of contract by Herzog (Count II); and 3) unjust enrichment against both Defendants. Plaintiffs' unjust enrichment claim is plead in the alternative to their breach of contract claims. Defendants seek summary judgment on all claims, arguing that: 1) Plaintiffs' breach of contract claims fail because a condition precedent to payment applies and has not occurred; 2) the statute of limitations bars Plaintiffs' breach of

5

contract claims; and 3) Plaintiffs' unjust enrichment claim fails because it is impermissibly tied to an express contract. The Court addresses each in turn.

## Analysis

### I.  Whether a Condition Precedent Exists

Defendants first argue that summary judgment is proper on Plaintiffs' breach of contract claims because W2TG's turning a profit is a condition precedent to any agreement by them to pay Beckstedt $2.1 million for their interests in the company.

A condition precedent is "an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform." *Cathay Bank v. Accetturo*, 66 N.E.3d 467, 476 (Ill. App. Ct. 2016). Conditions precedent are "generally disfavored" in Illinois, *Navarro v. F.D.I.C.*, 371 F.3d 979, 981 (7th Cir. 2004), and as such courts do not recognize them unless there is "language in the instrument that is unambiguous or the intent to create such a condition is apparent from the face of the agreement." *Homeowners Choice, Inc. v. Aon Benfield, Inc.*, 938 F. Supp. 2d 749, 758 (N.D. Ill. 2013). In fact, "so reluctant are courts to elevate a term to the status of a condition that the factual inquiry will often be undertaken in spite of the existence of explicit language . . . creating liability 'on condition' of the occurrence of a required, prior act." *Sahadi v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*, 706 F.2d 193, 198 (7th Cir. 1983).

Here, both Plaintiffs' and Defendants' arguments rely almost exclusively on Beckstedt's testimony at various stages of the citation proceedings and this lawsuit; Defendants offer no testimony of their own on the subject, and there is no written

agreement in evidence. But the most that Beckstedt says is that he "wished to get paid . . . off the top of any profits realized by [W2TG]" and "never expected" to get paid any sum for the transfer of his interest in W2TG to Defendants "unless and until" W2TG "showed substantial profits." R. 46, Ex. 3 ¶¶ 5, 10. That testimony in no way evinces the unambiguous intent of the parties to forego payment unless and until W2TG turned a profit. And Defendants deny that they ever agreed to pay Beckstedt in the first place, and thus offer no testimony on the subject. Accordingly, summary judgment based on an alleged condition precedent is improper.[5]

## II. Statute of Limitations

Defendants also contend that the statute of limitations bars Plaintiffs' breach of contract claims, assuming an agreement existed in the first place. A 10-year statute of limitations applies to written agreements in Illinois, 735 ILCS 5/13-205, while a 5-year statute of limitations applies to oral agreements, 735 ILCS 5/13-206. Defendants contend that there is no evidence of a written agreement, and that this action was filed outside of the 5-year statute of limitations for oral agreements, pointing to the allegation in the complaint that the agreement was reached "in or about 2012." But taking the evidence in the light most favorable to Plaintiffs as the Court must, and

---

[5] Defendants also contend that the reasons underlying courts' general wariness about conditions precedent do not apply here, because Defendants seek only to *delay* rather than *forfeit* any requirement of payment. But this argument also fails, because if W2TG never turns a profit, Plaintiffs' rights clearly would be forfeited. And that's the very reason courts are reluctant to find a condition precedent. *Navarro*, 371 F.3d at 981 ("in resolving doubts about whether a contract contains a condition precedent, interpretations that reduce the risk of forfeiture are favored") (citing Restatement (*Second*) *of Contracts* § 227(1) (1981)).

7

even setting aside the fact that Beckstedt testified to the possibility of a written agreement, a genuine issue of fact exists regarding the date of the agreement. Indeed, Beckstedt testified that the agreement could have been reached as late as April 2013—5 years prior to this lawsuit (making it timely even if oral). And record evidence also reflects the possibility that the agreement was not consummated until 2016. Summary judgment is not proper on this ground.

### III. Unjust Enrichment Claim Where Express Contract Governs

Defendants also argue that summary judgment is proper on Plaintiffs' unjust enrichment claim, because Beckstedt had no ownership rights in W2TG to assign after 2011, when he transferred his interest in W2TG to Rocky Mountain. R. 46-5 at 5-6. Defendants rely upon a written agreement to that effect, which contains no terms for payment to Beckstedt by Defendants or anyone else. *Id.* But as Plaintiffs point out, that document was not signed by Beckstedt, and therefore a dispute of fact remains over whether this transfer occurred. Defendants offer no retort. But even if they had, the Court agrees with Plaintiffs that whether Beckstedt had any interest to transfer in 2012 may not be relevant in any case, because Rocky Mountain dissolved in 2014, and record evidence supports an inference that Beckstedt transferred W2TG ownership interests to Defendants directly in 2016.

Defendants also contend that the unjust enrichment claim impermissibly relies on allegations of an express contract because it measures damages based on what Beckstedt claims he was due ($2.1 million), rather than the value of what Defendants gained. Defendants are correct that relief on an unjust enrichment claim

8

focuses on the value of the benefit retained by the defendant, not what was lost by the plaintiff. *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (unjust enrichment "does not seek to compensate a plaintiff for loss or damages suffered but seeks to disgorge a benefit that the defendant unjustly retains") (quoting *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 518 (7th Cir. 2011)). But nothing prevents Plaintiffs from arguing that the value of the ownership interest allegedly bestowed upon Defendants was $2.1 million, and nor is a summary judgment motion the proper vehicle to attack Plaintiffs' pleading in any case.

Accordingly, because issues of fact remain as to whether Defendants were unjustly enriched assuming no express contract, summary judgment is also denied as to Count III.[6]

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied. R. 46.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

---

[6] It is unclear whether Defendants contend that Count III is also barred by the 5-year statute of limitations applicable to unjust enrichment claims, and they do not expressly make the argument. *Blanchard & Assocs. v. Lupine Pharm., Inc.*, 900 F.3d 917, (7th Cir. 2018) (5-year statute of limitations on unjust enrichment claims in Illinois). But even if they had, for the reasons outlined in Section II *supra*, such a contention does not make summary judgment appropriate here.

Dated: April 16, 2020